# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **ALICIE REED,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:21-cv-464-RP** |
| | § | |
| **CITY OF LAGO VISTA, ROBERT** | § | |
| **MERCADO AND DOYCE SMITH,** | § | |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

## TO: THE HONORABLE ROBERT PITMAN
## UNITED STATES DISTRICT JUDGE

Before the Court are Defendant City of Lago Vista's Motion to Dismiss Plaintiff's First Amended Complaint, filed August 20, 2021 (Dkt. 11), and the associated response and reply briefs. On November 5, 2021, the District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

Plaintiff Alicie Reed is a resident of Lago Vista, Texas. On July 6, 2019, Lago Vista Police Department ("LGPD") officers arrested Reed outside her home for public intoxication. Reed alleges that the arresting officer, Officer Robert Mercado, used excessive force during her arrest by placing handcuffs on her too tightly and refusing to loosen the handcuffs after she complained that they were too tight. Reed further alleges that Officer Doyce Smith, Mercado's supervising officer, was present during the arrest and also refused to loosen the handcuffs. Reed alleges that "[t]he handcuffs stayed on Reed's wrists for several hours without anyone removing the handcuffs

or loosening them to address the pain complaints." First Am. Compl. (Dkt. 9) ¶ 20.  Reed alleges that, "as a result of the excessive tightness as well as the prolonged duration of the application of the handcuffs, the Plaintiff suffered permanent and severe damage to her wrists, particularly her right wrist, which required surgery to repair injuries and nerve damage." *Id.* ¶ 21. Reed contends that "there was no need or justification for the excessive tightness of the handcuffs." *Id.* ¶ 23.

On May 24, 2021, Reed filed this lawsuit, pursuant to 42 U.S.C. § 1983, against the City of Lago Vista, Officer Mercado, and Officer Smith (the "Officers") alleging that the excessive force used during her arrest violated her Fourth and Fourteenth Amendment rights under the United States Constitution. Specifically, Reed alleges (1) a Fourth Amendment excessive force claim against the Officers and (2) a *Monell*[1] claim against the City, based on the City's failure to train and supervise, having inadequate policies regarding handcuffing and the treatment of suspects, and failing to reprimand the Officers involved in her arrest.

The City now seeks dismissal of Reed's lawsuit for failure to state a claim under Rule 12(b)(6). Reed opposes the motion. The Court makes the following recommendations.

## II.    Legal Standards

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[1] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do. Factual allegations must be enough to raise a right
> to relief above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a

Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry

is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the

complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence

201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.    Analysis

**A. Section 1983**

Liability under 42 U.S.C. § 1983 results when a "person" acting "under color of" state law

deprives another of rights "secured by the Constitution" or federal law. Section 1983 "is not itself

a source of substantive rights," but merely provides "a method for vindicating federal rights

elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Thus, a plaintiff must

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91(1978), the Supreme

Court held that municipalities may be sued under Section 1983 but cannot be held liable for acts

of their employees under a theory of *respondeat superior*. "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To establish municipal liability under Section 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847. These three requirements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578. A plaintiff need not offer proof of her allegations at this stage, but still must plead facts plausibly supporting each element. *Iqbal*, 556 U.S. at 678.

"Official policy establishes culpability, and can arise in various forms." *Peterson*, 588 F.3d at 847. Official policy usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* In addition, a "single decision" may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). A policy can be shown in "extreme factual situations" where "the authorized policymakers approve a subordinate's decision and the basis for it," thereby ratifying the subordinate's unconstitutional actions. *Peterson*, 588 F.3d at 848 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Finally, a municipality's decision not to train or supervise its employees about their legal duty to avoid violating citizens'

rights may rise to the level of an official policy for purposes of Section 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). And "a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848. This means that "there must be a direct causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Id.*; *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

## B. Alleged Policy or Custom

Based on the foregoing, to state a claim against the City, Reed must sufficiently allege that (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the "moving force" behind the violation of a constitutional right. *Peterson*, 588 F.3d at 847. The parties dispute whether Reed has alleged sufficient facts to show a policy or custom that was the moving force behind the alleged violation of Reed's Fourth Amendment rights.

Reed's First Amended Complaint alleges that the City is liable under Section 1983 for (1) acting with deliberate indifference in failing to provide the Officers with supervision and training regarding the reasonable use of force; (2) having inadequate polices regarding handcuffing and treatment of suspects; and (3) failing to reprimand the Officers after the incident giving rise to this lawsuit, which ratified "the unconstitutional violence perpetrated against the Plaintiff." Dkt. 9 ¶ 7.

The City argues that Reed has failed to allege a plausible *Monell* claim against the City under any of these theories. The City contends that

> Plaintiff's pleading does not overcome the *Twombly* standard with respect to the City of Lago Vista because there is no allegation of facts plausibly showing that some City policy or practice or inadequate training, hiring or supervision and deliberate indifference by the City were the moving force behind the single incident of alleged excessive force.

Dkt. 11 at 3.

Reed does not respond to the City's arguments regarding her failure to supervise and train claim in her Response to the City's Motion to Dismiss. By failing to respond to the City's arguments, Reed has failed to sustain her burden of proof and has abandoned that claim. *See In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (finding that plaintiff abandoned his malicious civil prosecution claim where he failed to respond to defendant's arguments in motion to dismiss); *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff's failure to defend her retaliatory abandonment claim in response to defendant's motion to dismiss "constituted abandonment").

Accordingly, the Court need address only whether Reed has alleged sufficient facts to show that the City ratified the use of excessive force or failed to have adequate policies regarding the use of excessive force.

### 1. Ratification

Reed argues that the City is liable because it ratified the alleged excessive force the Officers used against her by failing to reprimand them. Specifically, Reed alleges that the City's "authorized policymakers reviewed the incident made the basis of this suit and found no excessive force and no violation of Lago Vista Department policy," and that the City's failure to reprimand the Officers "is ratification of the unconstitutional violence perpetrated against the Plaintiff." Dkt. 9 ¶ 31.

In support of her ratification theory, Reed argues that "[t]he legal concept of ratification is well-established in the Fifth Circuit." Dkt. 14 at 2. She cites the Fifth Circuit's 37-year-old opinion in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), for the proposition that "the disposition of a policymaker may be inferred from his conduct after the events giving rise to an excessive force claim." *Id.* Reed's reliance on *Grandstaff* is misplaced.

In *Grandstaff*, the Fifth Circuit imposed liability on a city for a policy of "prevalent recklessness" when a group of police officers killed a man they mistook for a fugitive. 767 F.2d at 171. Fifth Circuit precedent, however, "has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848; *see also Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) (noting that ratification "is limited to 'extreme factual situations'"); *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (same). In *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) the Fifth Circuit explained that *Grandstaff*

> does *not* stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy. Rather, *Grandstaff* affirmed a judgment against a Texas city on a highly peculiar set of facts: in response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability." The *Grandstaff* panel emphasized the extraordinary facts of the case, and **its analysis can be applied only to equally extreme factual situations**.

*Id.* at 1161 (internal citations omitted) (emphasis added).

Subsequently, the Fifth Circuit has acknowledged that "ratification is 'seldom, if ever, found by this court.'" *Peterson*, 588 F.3d at 848 n.2; *see also, e.g.*, *Davidson*, 848 F.3d at 396 (holding that city could not be liable under ratification theory where chief of police reviewed plaintiff's arrest and found no constitutional violation even though arrest violated plaintiff's First Amendment rights because underlying conduct by officers, "while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification"); *Peterson*, 588 F.3d at 848 (rejecting ratification theory where police chief later condoned officer's use of excessive force in striking plaintiff with his knee during arrest because case did not present "an extreme factual situation"); *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998) (rejecting ratification theory where plaintiff was shot in the back while fleeing on foot from police, finding case "hardly rises to the level of the 'extraordinary factual circumstances' presented in *Grandstaff*—particularly given the absence of evidence suggesting a culture of recklessness" in the city police department).

Since *Grandstaff*, the Fifth Circuit has stated repeatedly "that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848; *see also Davidson*, 848 F.3d at 395 (same); *Coon*, 780 F.2d at 1161 (same). Moreover, "good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification." *Davidson*, 848 F.3d 395. Policymakers who "simply go along with" a subordinate's decision do not thereby vest final policymaking authority in the subordinate; nor does a "mere failure to investigate the basis of a subordinate's discretionary decisions" amount to such a delegation. *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004). "Such limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which

theory *Monell* does not countenance. Policymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Id.* (citations omitted).

Here, Reed alleges that the Officers used excessive force during her arrest by handcuffing her wrists too tightly and refusing to take the handcuffs off for several hours. Reed further alleges that the City's authorized policymakers reviewed the incident, "found no excessive force and no violation of Lago Vista Department policy," and failed to reprimand the officers in any way. Dkt. 9 ¶ 31. Based on the Fifth Circuit precedent cited above, these allegations do not rise to the level of the "extreme factual situation" presented in *Grandstaff* to invoke ratification liability on the City. *Compare Grandstaff*, 767 F.2d at 171, *with Peterson*, 588 F.3d at 848.

The fact that the City failed to take disciplinary action in response to Reed's complaints "does not show that they knew of and approved the illegal character of the arrest, determining that it accorded with municipal policy." *Milam*, 113 F. App'x at 628; *see also Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (rejecting ratification theory where sheriff accepted officer's use of force report, refused to turn over evidence until suit was filed, and defended officer's actions); *Peterson*, 588 F.3d at 848 (refusing to find ratification based on "a policymaker who defends conduct that is later shown to be unlawful"). Furthermore, the Fifth Circuit stated in *Peterson* that "it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id.* Clear Fifth Circuit precedent forecloses Reed's ratification claim.

### 2.  Alleged Inadequate Policies

The Court also finds that Reed has not alleged sufficient facts to support her inadequate policy theory of liability.

Reed alleges in her First Amended Complaint that she

> has a reasonable belief that the City of Lago Vista' policies regarding the handcuffing of suspects, the treatment of suspects while in custody and response to suspects' complaints were inadequately drafted and enforced to such a degree that these policies represent constitutional violations, that led directly or indirectly to the Plaintiff's injuries."

Dkt. 9 ¶ 29. She provides no factual enhancement or support for this allegation. "To proceed beyond the pleading state, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). To plausibly "plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Pena*, 879 F.3d at 622 (quoting *Connick*, 563 U.S. at 61).

While Reed alleges specific facts about the Officers' use of excessive force, she fails to allege specific facts to show that the City had an inadequate policy regarding the use of excessive force and that the policy was the "moving force" behind the constitutional violation. Reed does not identify a specific policy or how that policy was the moving force behind the alleged violation of her constitutional rights. Nor does not describe what training the officers received or explain how that training was deficient. Instead, she merely proffers the conclusory allegation that the City's policies were inadequate because she suffered a constitutional violation. Such conclusory allegations are insufficient to defeat a motion to dismiss. *See Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir.) (holding that arrestee failed to establish county had official custom or policy requiring officers to use excessive force where arrestee's allegations merely described events giving rise to his lawsuit), *cert. denied*, 141 S. Ct. 376 (2020); *Pena*, 879 F.3d at 622 (finding that plaintiff failed to allege sufficient facts to show policy where she alleged only specific facts regarding incident giving rise to her suit); *Spiller*, 130 F.3d at 167 (finding that plaintiff's

conclusory assertion city was liable because city employee "was acting in compliance with the municipality's customs, practices or procedures" was insufficient to state a claim).[2] Without alleging facts to show that the Officers were acting in conformance with a City policy or custom, the allegations do not adequately state a claim under which the City may be held liable.

## C.  Conclusion

Reed has not alleged a plausible claim against the City because she has failed to assert sufficient facts to show that a City policy or custom was the moving force behind the violation of her Fourth Amendment rights. Accordingly, the City's Motion to Dismiss should be granted.

## IV.     Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant City of Lago Vista's Motion to Dismiss (Dkt. 11), **DISMISS** all claims against the City of Lago Vista, and **DISMISS** the City of Lago Vista from this lawsuit.[3]

**IT IS FURTHER ORDERED** that this case be **REMOVED** from the Magistrate Court's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v.*

---

[2] *See also Bolton v. City of Austin*, No. A-17-CA-00077-SS, 2017 WL 2799313, at *3 (W.D. Tex. June 26, 2017) (finding that plaintiff's allegations city's policies regarding the use of excessive force and unlawful detention were "insufficient" were conclusory where plaintiff did not "describe what training the named officers did receive, nor did he explain how that training was deficient"); *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011) (granting defendants' motion to dismiss where plaintiff made "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice").

[3] Because individual defendants Mercado and Smith were not parties to the instant Motion to Dismiss, Plaintiff's Fourth Amendment claims against the individual defendants remain pending.

*United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

 **SIGNED** on February 10, 2022.

              _____

              SUSAN HIGHTOWER
              UNITED STATES MAGISTRATE JUDGE